UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVETT J. HALL,

    Plaintiff,                                                   Civil Action No.1:11-cv-249

    vs.                                                          Dlott, C.J.
                                                             Bowman, M.J.

NATIONAL ASSOCIATION OF,
LETTER CARRIERS, AFL-CIO, et. al.

    Defendants.

## REPORT AND RECOMMENDATION

This civil action is before the Court on the motions for summary judgment by the Postal Service (Doc. 38) and the National Association of Letter Carriers AFL-CIO (Doc. 39) and the parties' responsive memoranda. (Docs. 42, 43, 44). Pursuant to local practice, this case has been referred to the undersigned magistrate judge for disposition of all pretrial matters, including the filing of a report and recommendation on any dispositive motions. *See* U.S.C. §636(b). For the reasons set forth herein, I now recommend that the motions for summary judgment by the Postal Service and the National Association of Letter Carriers AFL-CIO should be **GRANTED**.

### I. BACKGROUND AND FACTS

Plaintiff Davett Hall was a letter carrier for the U.S. Postal Service ("Postal Service"). In February 2009, Plaintiff fell while delivering mail on her route and sustained injuries to her back. (Doc. 38, Ex. 1, Hall dep., 8). Plaintiff returned to work with work restrictions issued by the worker's compensation doctor that restricted her to

light work, such as answering phones. Two weeks later, that doctor released her from light duty so she could return to her letter carrier duties with certain restrictions. *Id.*, 11.[1]

In May or June of 2010, Hall applied to the Trenton, Ohio office for a transfer to a position as a General Clerk. (Doc. 38, Ex. 2 p. 2, Fitzpatrick Aff. ,¶4). In order to qualify for a General Clerk position with the Postal Service, applicants were required to pass a typewriting examination. *Id.* On June 18, 2010, Plaintiff took the General Clerk's typewriting examination. (Doc. 38, Ex. 1, Hall Dep., 13). Plaintiff failed the test and therefore did not qualify to work as a General Clerk. A Window Clerk position was also available at this time. (Doc. 38, Ex. 2, Fitzpatrick Aff., ¶ 11). The Window Clerk position does not require a typing test; however, that position requires an employee to be able to lift 70 pounds. *Id.,* ¶11. At that time, Plaintiff had a 5 pound lifting restriction as well as limitation on standing (intermittently for 1 hour per day), and walking (2 hours per day) and no climbing, kneeling, bending or twisting. (Doc. 38, Ex. 2, Fitzpatrick Aff., ¶ 7).

After Plaintiff failed the typing test, the Postal Service continued to search for a position for Hall that would accommodate her physical labor restrictions. (Doc. 38, Ex. 2 p. 2, Fitzpatrick Aff., ¶3). Plaintiff's weight-lifting restriction effectively precluded Hall from most physical types of labor, as even closing the door on a standard mail truck required sufficient strength to lift more than five pounds. (Doc. 38, Ex. 4, O'Reilly Dep. p. 31-32). Plaintiff's supervisors' were unable to find a position that accommodated her restrictions. As a result, Plaintiff was placed in an off-duty status on August 9, 2010 by the Trenton Postmaster, Connie Danford. (Doc. 38, Ex. 1, Hall Dep. 44). While she was

---

[1] Plaintiff was unable to recall the specific restrictions but presumed she was assigned weight restrictions and a limited number of hours standing and walking. (Doc. 38 at 11-12).

2

in off-duty status, Plaintiff continued to receive workers' compensation benefits in order to treat and manage her disability. *Id.*, 36.

On December 6, 2010, Plaintiff returned to active status when she was transferred to the Rossville location, a sub-office of the Postal Service just outside of Hamilton, Ohio. (Doc. 38, Ex. 1 p. 21-22, Hall Dep.). At Rossville, Plaintiff worked again as a letter carrier, but with restricted or limited physical requirements pursuant to her doctor's recommendations and the Offer of Modified Assignment, Limited Duty. (Doc. 28, Ex. 5, Offer of Modified Assignment). The Postmaster of the Hamilton office at the time of Hall's transfer was Todd O'Reilly, and Plaintiff's supervisor at the Rossville sub-office was Matt Johnson. (Doc. 38, Hall Dep., 23-24).

On February 5, 2011, Plaintiff returned to work with new physical restrictions from her doctor. According to Plaintiff, however, she became ill at work due to her severe neck and back pain and went home later that day. (Doc. 5, ¶ 43). Thereafter, O'Reilly informed Plaintiff that when she walked off the job on February 5, 2011, she was considered absent without leave ("AWOL") and that his standard policy for AWOL was a 14-day suspension. O'Reilly also notified Plaintiff that the Postal Service was contesting her new physical restrictions because they were too specific and continuously changed. (Doc. 33, O'Reilly dep., 10-11). However, no suspension ever occurred from Plaintiff walking off the job. (Doc. 38, Ex. 1 p. 67, Hall Dep.; Ex. 4 p. 19, O'Reilly Dep.).

On February 11, 2011, Plaintiff filed her Information for Pre-Complaint Counseling (Pre-Complaint) with the EEO office. (Doc. 38, Ex. 3). In the pre-complaint, Plaintiff states that she was told by a co-worker on January 14, 2011, that "an African

3

American male [C. J. Solomon] who failed the typing test as [she] had, was given the opportunity to go to clerk school" and that employee was offered the general clerk position. *Id.* She believes he was later transferred to the Window Clerk position. (Doc. 42, Hall Aff.,¶ 5). Plaintiff alleges that she was discriminated against because Solomon failed the typing exam but was permitted to attend clerk school and was ultimately awarded the General Clerk position. In her Pre-Complaint, Plaintiff also described another incident on February 11, 2011, where Todd O'Reilly threatened to suspend her for fourteen (14) days as a result of Hall leaving work without permission. (Doc. 38, Ex. 3). Plaintiff also requested a rescission of her 14-day suspension (that was never enforced). *Id.*

On May 23, 2011, Plaintiff filed a formal discrimination complaint with EEO. (Doc. 38, Ex. 6). The complaint alleged discrimination based on race, gender, and disability when she was denied clerk training and was told she might face a 14-day suspension. EEO found that she was ineligible for the General Clerk position because she failed the typing exam. *Id.* EEO also found that Plaintiff was never issued a 14-day suspension nor received any disciplinary action for her attendance. Therefore, EEO found Plaintiff was not "aggrieved" according to 29 C.F.R. § § 1614.107(a) and 1614.106(c) and dismissed the complaint.

Plaintiff commenced this action on April 21, 2013 against the Postal Service and the National Association of Letter Carriers, AFL-CIO. (Doc. 1). Plaintiff alleges breach of contract; breach of duty of fair representation; conspiracy to breach; reverse race discrimination; gender-based discrimination; and disability discrimination. This case is

4

now before the Court on Defendants' motions for summary judgment. For the reasons explained below, I find that the Defendants' motions are well-taken.

## II. Analysis

### a. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.,* 328 F.3d at 873 (quoting *Anderson,* 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a "genuine" dispute means that there

must be more than some metaphysical doubt as to the material facts). The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243.

### b. The Postal Service's motion for Summary Judgment is Well-Taken.

The Postal Service now moves for summary judgment asserting that Plaintiff cannot establish a *prima facie* case of discrimination based upon disability or gender and/or for reverse race discrimination.[2] Plaintiff contends that genuine issues of material facts exist relating to Plaintiff's disability claims, thereby precluding summary judgment.

*1. Race and Gender Claims*

In order to establish a *prima facie* case of race and/or gender discrimination, Plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for a job; and (4) a similarly situated employee was treated more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Employees are similarly situated if they are "subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would diminish their conduct or the employer's treatment of them for it." *Jones v. Potter*, 488 F.3d 397, 405 (6th Cir. 2007).

With respect to her claim of reverse race discrimination, the first prong of a *prima facie* case requires Plaintiff to establish by showing "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates

---

[2] The postal service further asserts that they are entitled to judgment as a matter of law because Plaintiff did not timely contact the Equal Employment Opportunity (EEO) Counselor. Nonetheless, Plaintiff's claims will be addressed on the merits.

6

against the majority." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)). Plaintiff may show "background circumstances" using "evidence of [the Postal Service's] unlawful consideration of race as a factor in hiring in the past [that] justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Zambetti*, 314 F.3d at 256. The remaining elements of a *prima facie* case of reverse race discrimination are identical to those of a race discrimination claim. *Id.* The Postal Service asserts that Plaintiff cannot establish *a prima facie* case of gender or reverse race discrimination because she was not qualified for the window and/or general clerk job; nor can she establish that a similarly situated employee was treated more favorably. The undersigned agrees.

Here, Plaintiff alleges that the Postal Services discriminated against her based on her race and/or gender when she was not given the opportunity to obtain a General Clerk position and/or a Window Clerk position. However, the evidence shows that Plaintiff was not qualified for either position. The General Clerk position and the Window Clerk position are two different jobs within the Postal Service, and they have different job requirements. (*See* Doc. 38, Ex. 2 p. 2.). Receiving a passing score on a typing test was a mandatory requirement for the General Clerk position. Plaintiff concedes that she failed the typing test.

The Window Clerk position does not require a passing score on the typing test, but does require an applicant to be capable of lifting up to seventy pounds. (Doc. 38, Ex. 2 p. 2-3). At the time Plaintiff applied for the General Clerk position, she had lifting restrictions for work that limited her from picking up items heavier than approximately

five pounds. (Doc. 38, Ex. 1, Hall Dep.,p. 15-16; Fitzpatrick Aff.). Plaintiff was not offered the Window Clerk position because of her lifting restrictions. (Doc. 38, Ex. 2, Fitzpatrick Aff., ¶14). Because Plaintiff could not satisfy the minimum weight lifting requirement for the Window Clerk position, she was not qualified for that job.

Next, even assuming Plaintiff was qualified for the position(s) in question; she cannot show that a similarly situated employee was treated more favorably. Notably, Plaintiff alleges that another employee of the Postal Service, CJ Solomon ("Solomon"), an African American male, was given preferential treatment: first by obtaining the General Clerk position and then moving to a Window Clerk Position. (Doc. 42 at 6).

According to Jeff Fitzpatrick, the Labor Relations Manager for the Postal Service's Cincinnati District, Solomon did not attend Clerk school because he had not passed the typing test and was therefore not qualified for the General Clerk position. (Doc. 38, Ex. 2, Fitzpatrick Aff.,¶10). Rather, Solomon was offered a job as a Window Clerk, a distinctly different position than General Clerk, because he was capable of meeting the minimum job requirement of lifting up to seventy (70) pounds. *Id.* at ¶13. Different from the General Clerk job, the Window Clerk position did not require a passing typing test score as a prerequisite. *Id.* at ¶12. Solomon had been offered to transfer from a letter carrier to a Window Clerk because of a physical restriction that precluded him from walking more than two (2) hours per day. *Id.* at ¶8, 13. Plaintiff was not offered the Window Clerk job because she had a lifting restriction of no more than five (5) pounds and was therefore not qualified. *Id.* at ¶14.

In order to be considered similarly situated, employees must be "subject to the same standards, and engaged in the same conduct without such differentiating or

8

mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jones v. Potter*, 488 F.3d 397, 405 (6th Cir. 2007). Hall and Solomon both failed the typing test, and both were not qualified for that job. However, Solomon was physically capable of performing the minimum tasks required for a Window Clerk, while Plaintiff was not. Therefore, Solomon and Plaintiff are not similarly situated so Plaintiff fails the fourth prong as well. As a result, these claims fail as a matter of law.

With respect to Plaintiff's claim for reverse-race discrimination, she has not shown any background circumstances suggesting that the Postal Service is an employer who discriminates against the majority. Plaintiff has also failed to show that she was treated differently than similarly situated employees. Plaintiff has produced no evidence of the Postal Service's past hiring, promotion, or termination practices and, therefore, cannot show that the Postal Service discriminates against the majority. Furthermore, Plaintiff has produced no evidence that she was replaced by a similarly situated African-American employee who experienced more favorable treatment than she did. Although the requirement that a plaintiff compare her treatment to those of similarly situated employees does not require proof that the employees were identically situated, it does require proof "that all of the relevant aspects of [Plaintiff's] employment situation were 'nearly identical' to those of [Solomon's] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). As discussed, Solomon and Plaintiff were not similarly situated. Therefore, this claim also fails as a matter of law.

*2. Disability Claim*

The Rehabilitation Act constitutes the exclusive remedy for a federal employee alleging disability-based discrimination. See 42 U.S.C. § 12111(5)(B)(i) (defining employers covered by the ADA, but excluding the United States or a corporation wholly owned by the U.S. government); *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir.2004) ("[T]he Rehabilitation Act ... provides the remedy for federal employees alleging disability discrimination."). Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). To recover on a claim of discrimination under the Rehabilitation Act, a federal employee must show that: (1) she is an individual with a disability, (2) she is otherwise qualified to perform the job requirements, with or without reasonable accommodation, and (3) she was discharged or otherwise discriminated against solely by reason of her handicap. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citing Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a).

Plaintiff claims the Postal Service discriminated against her based on her disability when it threatened a fourteen-day the suspension after she was unable to work due to illness. The complaint alleges that on February 5, 2011, Plaintiff became ill at work due to her severe neck and back pain. (Doc. 5, ¶ 43). According to Todd O'Reily, Plaintiff then walked off the job because she was told that the Postal Service would be contesting her new work restrictions, provided by her doctor. (Doc. 38, Ex. 4 p. 17, O'Reilly Dep.). Thereafter, on February 9, 2011, O'Reilly charged Plaintiff with

10

AWOL.  He further testified that the standard Postal Service policy for workers who are absent without leave (AWOL) is the imposition of a fourteen-day suspension. *Id.* at 18-19.  However, O'Reilly, further testified that the suspension was never imposed.  *Id.* at 19.  Plaintiff has provided no evidence to rebut this non-discriminatory reason for the threatened suspension, nor any to suggest that the suspension was the result of disability discrimination.

Furthermore, as noted by the Postal Service, even if Plaintiff could rebut the non-discriminatory reason, the threatened suspension cannot be considered an adverse employment action because it was never actually imposed.  Notably, "mere threats to take adverse employment actions (assuming without deciding, that the threatened discipline . . . would be an adverse employment action) are insufficient to constitute adverse employment actions themselves." *Berryman v. SuperValu Holdings Inc.*, No. 3:05cv169, 2010 WL 1257833, *13 (S.D. Ohio Mar. 31, 2010) (citing *Hollins v. Atlantic Co.*, 188 F.3d 652 (6th Cir. 1999); *see also Lucenti v. Potter*, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) ("reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions.").  Here, the evidence shows that no action was taken against Plaintiff for walking off the job, in spite of O'Reilly's statement that she would be suspended.  As such, Plaintiff suffered no adverse employment action to satisfy the second prong of a *prima facie* case of disability discrimination.

In light of the foregoing, the undersigned finds that the Postal Service is entitled to judgment as a matter of law.

**c. The Union Defendants are entitled to Judgment as a Matter of Law.**

Plaintiff's claims against the Union Defendants stem from her removal from work on August 9, 2010, purportedly pursuant to the Postal Service's National Reassessment Process ("NRP"), which concerns letter carriers with physical restrictions. Plaintiff's union[3] grieved the Postal Service's action under the collective bargaining agreement's grievance-arbitration provision. Her grievance was resolved in a settlement dated December 7, 2010, which put Plaintiff back to work with a modified job offer. The grievance settlement did not provide Plaintiff with certain monetary relief (including back pay, restoration of annual leave and sick leave) for the time she was out of work. Plaintiff claims that the Union Defendants breached their duty of fair representation ("DFR") by not including the monetary relief in the settlement. Plaintiff further alleges that the Postal Service and the Union Defendants breached the collective bargaining agreement.

    1. *Applicable law*

Plaintiff's claims that the Postal Service breached the CBA by wrongfully removing her from her position and that the Union Defendants breached their duty of fair representation ("DFR") by failing to properly obtain "back pay, restoration of annual leave, sick leave and T.S.P. [Thrift Savings Plan]" together constitute what is known as a hybrid breach of contract/DFR claim. "A hybrid § 301 suit is one that presents claims

---

[3] The Postal Service is an independent establishment of the executive branch of the Government of the United States. 39 U.S.C. §201. NALC is the exclusive bargaining representative of all city letter carriers employed by the USPS. NALC and USPS are parties to a national collective bargaining agreement ("CBA"). (Ex. 2, ¶2, Declaration of Daniel Toth). Certain collective bargaining activities at the local level are handled by NALC-affiliated local labor organizations called Branches. Branch 426 represents letter carriers stationed in Hamilton, Ohio and other locations, including Trenton, Ohio. (Id.) The CBA contains a grievance – arbitration provision (Article 15). (Ex. 2, ¶4, and Attachment A thereto, Declaration of Daniel Toth). Grievances are typically handled at the first (Step A) levels by Branch union representatives at the Postal Service facility where the affected letter carrier is stationed. *Id.*

against the employer for breach of the CBA and against the union for breach of the duty of fair representation." *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 384, 1991 WL 132549 (6th Cir. 1991). To prevail on such a hybrid claim against either party, the plaintiff must prove both that the employer breached the collective bargaining agreement and that the union breached its DFR. *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164-65 (1983); *Driver v. U.S. Postal Service, Inc.*, 328 F.3d 863, 868 (6th Cir. 2003). Thus, Plaintiff must establish both violations if she is to succeed against either party, as the claims are "inextricably interdependent." *Id.* at 538.

Unions covered by federal labor law owe a duty of fair representation to represented employees. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967). To establish a breach of the DFR, a plaintiff must show that the union's actions towards her were "arbitrary, discriminatory, or in bad faith." *Id.* at 190. This DFR standard is purposefully "highly deferential" in order to permit unions "wide latitude" in the performance of their bargaining responsibilities, including contract administration. *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991).

Courts employ a three prong test when determining whether a union breached its duty: "(1) did the union act arbitrarily; (2) did the union act discriminatorily; or (3) did the union act in bad faith." *Merritt v. Internatl. Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010) (quoting *Griffin v. Air Line Pilots Ass'n, Int'l*, 32 F.3d 1079, 1083 (7th Cir. 1994)).

The Supreme Court has defined arbitrary conduct as conduct that is "so far outside of a wide range of reasonableness that it is wholly irrational." *Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 66 (1991) (internal citations omitted). A "wide

range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998). While this Court has noted that discriminatory conduct is difficult to define, it has stated that "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives" is conduct that breaches the duty of fair representation. *Merritt*, 613 F.3d at 619. Finally, this Court has defined bad faith as "acts with an improper intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other intentionally misleading conduct." *Id.* (internal citations omitted); *See also Vaca*, 386 U.S. at 177 (racial discrimination that is invidious serves no legitimate purpose).

    2. *The Union did not Breach the Duty of Fair Representation*

In this case, Plaintiff contends that the testimony of the Union representative establishes incompetence that "constitutes and arbitrary and bad faith mishandling of her grievance." Plaintiff further asserts that the union mishandled her grievance due to a fundamental lack of understanding or attention to the remedies she sought. Such allegations, however, fail to establish that the union's actions were unreasonable. To the contrary, the undisputed evidence shows that the Union acted reasonably and in Plaintiff's best interests.

As noted above, after Plaintiff was removed from her position at the post office pursuant to the National Reassessment Process ("NRP"), her union grieved the Postal Services action under the CBA's grievance arbitration provision. Thereafter, Mr. Lear (Plaintiff's union representative) testified that he set up Plaintiff's grievance to go to arbitration. (Doc. 39, Lear Dep. at 10). He then learned that Plaintiff was offered a job

with modified restrictions. Notably he testified that he was told that across the country no one [NRP cases] was getting their jobs back and they were all going to arbitration. Thus, he eagerly closed the deal so that Plaintiff could immediately return to work.

Lear was under the impression that he could seek any make-whole monetary remedy concerning Hall in a subsequent grievance. In this regard, Lear testified that the union's national business office's "goal in fighting the NRP cases, not just Davett's but all of them, were to get the job back first." *Id.* At that time, it was his understanding that after you got the job back, "then you go for any back pay, any lost Thrift Savings Plain, sick days, anything like that." He further testified that "[I]n July when I had talked to the [national] office, and in July of 2010, I had yet to do Davett's case, but I was working on another one. And [Dan Toth] said the main job is to get the job back, get them back to getting back to getting paid and then go for benefits. That was my understanding." *Id.* at 12. However, when Lear checked with NALC's National Business Agent's office for his region several days later about Plaintiff's make-whole settlement, he was advised that he should have included any such request in his first grievance resolution. *Id.*, p. 11.

In light of the foregoing, the undersigned finds that there is no evidence in the record that the Union acted arbitrarily, discriminatorily, or in bad faith. Notably, "demonstrating breach of duty by the Union . . . involves more than demonstrating mere errors in judgment." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976. Thus, genuine mistake does not rise to the level of fraudulent, deceitful, wholly irrational, or invidious conduct. Accordingly, the Union Defendants are entitled to

judgment as a matter of law with respect to Plaintiff's claim for breach of the duty of fair representation.[4]

### III. CONCLUSION

Based on the foregoing, the undersigned concludes that the motion for summary judgment is well-taken. It is therefore **RECOMMENDED** that the motions for summary judgment by the Postal Service (Doc. 38) and the National Association of Letter Carriers AFL-CIO (Doc. 39) be **GRANTED,** and this case be **TERMINATED** from the active docket of this Court.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[4] Plaintiff also alleges that the Postal Service violated her contractual rights by wrongfully removing her from her position as part of the National Reassessment Process. Since Plaintiff failed to establish a breach of duty of fair representation, her breach of contact claim is moot. Plaintiff must establish both violations if she is to succeed against either party, as the claims are "inextricably interdependent." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir. 1994)). As such, Plaintiff's purported claim for conspiracy to violate her contractual rights should also be dismissed as moot, as the evidence fails to establish any claim for breach of contract.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVETT J. HALL,

    Plaintiff,

vs.

NATIONAL ASSOCIATION OF,
LETTER CARRIERS, AFL-CIO, et. al.

    Defendants.

Civil Action No.1:11-cv-249

Dlott, C.J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

17